ORDERED.

Dated: February 16, 2022

_____
Michael G. Williamson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 8:21-bk-02578-MGW
                                                          Chapter 11
2408 W. Kennedy, LLC,

    Debtor.
_____/

2408 W. Kennedy, LLC,                                     Adv. No. 8:21-ap-00288-MGW

    Plaintiff,
v.

PV-SOHO, LLC,

    Defendant.
_____/

**MEMORANDUM OPINION ON
THE *ROOKER-FELDMAN* DOCTRINE**

    The *Rooker-Feldman* doctrine deprives this Court of jurisdiction over suits by state-court losers seeking review and rejection of state court judgments. Here, the Debtor asks this Court to declare that a state court foreclosure judgment did not

terminate its leasehold interest in a vacant lot, which the Debtor wants to assume in its chapter 11 case. The Debtor says *Rooker-Feldman* is no obstacle to this Court doing so since the foreclosure judgment is (allegedly) void for lack of service of process. Because the Eleventh Circuit does not recognize an exception to *Rooker-Feldman* for judgments that are void, this Court lacks jurisdiction over the Debtor's claims and must dismiss this adversary proceeding.

**I.    Background.**

The background of this dispute is complicated. The story, which begins more than sixteen years ago, involves a foreclosure action that, itself, spanned nearly a decade. Suffice it to say the foreclosure action is a mess procedurally. Fortunately, though, most of what happened during the foreclosure is irrelevant to the issues this Court must decide.

It is enough, for this Court's purposes, to say the Debtor leased a vacant lot from BAMC Development Holding, LLC.[1] Whitney National Bank held a first mortgage on the lot.[2] In 2010, Whitney National Bank sued in state court to foreclose its mortgage and recorded a notice of *lis pendens*.[3]

Although the Debtor contends Whitney National Bank was aware of its lease with BAMC Development, Whitney National Bank did not name the Debtor as a

---

[1] Adv. Doc. No. 8, ¶¶ 8 & 9.

[2] *Id.* at ¶ 8 & Ex. C, ¶ 2.

[3] *Id.* at ¶ 10 & Ex. F, p. 2.

defendant in the foreclosure action.[4] Nor did Whitney National Bank serve the Debtor with the foreclosure complaint.[5] Instead, Whitney National Bank named "unknown defendants."[6] The unknown tenants, who were never served, were later dropped from the suit.[7]

In July 2018, nearly eight years after the foreclosure action had been filed, the state court entered a $2.8 million foreclosure judgment.[8] The foreclosure judgment provided that Whitney Bank's mortgage (which, by then, had been assigned to Biel Loanco III-A, LLC) was "superior in dignity to any right, title, interest or claim of the defendants *and all persons, corporations, or other entities claiming by, through, or under any of them*."[9] Two days before the foreclosure sale, the Debtor sought to intervene in the foreclosure action (the Debtor later objected to the foreclosure sale).[10]

The state court allowed the Debtor to intervene but overruled the Debtor's objections to the foreclosure sale.[11] As one of its grounds, the state court relied on

---

[4] *Id.* at ¶¶ 10 & 13. Although the Debtor was not named in the foreclosure action, Christopher Scott—who signed the lease on the Debtor's behalf (*id.* at Ex. A.) and was the Debtor's managing member (*id.* at Ex. D), was named as a defendant (*id.* at ¶ 13).

[5] *Id.* at ¶¶ 10 & 11.

[6] *Id.*

[7] *Id.* at ¶¶ 11 – 13.

[8] *Id.* at ¶ 15.

[9] Adv. Doc. No. 21, Ex. A at ¶ 6 (emphasis added).

[10] Adv. Doc. No. 8, ¶¶ 17 – 20 & Ex. D.

[11] *Id.* at ¶¶ 21, 22 & Exs. E & F.

section 48.23, Florida Statutes, which provides that, except with respect to persons in possession or easements of use, the recording of a notice of *lis pendens* bars the enforcement of an unrecorded interest in land unless the party claiming an interest intervenes in the proceedings within thirty days.[12] The Debtor never appealed the order overruling its objection to the foreclosure sale.

So the vacant lot was sold at a foreclosure sale; the state court issued a writ of possession directing the sheriff to evict all persons from the property; and the sheriff served the writ of possession.[13] After the sheriff served the writ of possession, CCIC I, LLC, which had taken assignment of the foreclosure judgment, took possession of the property.

CCIC later moved for an order enforcing the writ of possession to remove two pieces of abandoned personal property from the vacant lot. At CCIC's request, the state court entered an order enforcing the writ of possession.[14] In its order enforcing the writ of possession, the state court reiterated its reasoning for overruling the Debtor's objection to the foreclosure sale:

> It is obviously not the law that an unrecorded 99-year lease postdating a note and mortgage can operate to defeat

---

[12] *Id.* at Ex. F, p. 2; *see also* § 48.23(d), Fla. Stat. (2019); *U.S. Bank Nat'l Ass'n v. Quadomain Condo. Ass'n, Inc.*, 103 So. 3d 977, 979 ("In other words, the only way to enforce a property interest that is unrecorded at the time the *lis pendens* is recorded is by timely intervening in the suit creating the *lis pendens*—all other actions are barred."). It appears the Debtor disagrees with the state court's conclusion that section 48.23(d), Florida Statutes, bars the Debtor from enforcing its leasehold interest. Adv. Doc. No 17, ¶ 19 n.14.

[13] Adv. Doc. No. 8, ¶¶ 17 n.3 & 28 – 36.

[14] *Id.* at ¶ 37.

foreclosure of the mortgage. In some circumstances, a lessee is procedurally entitled to a separate foreclosure proceeding, but that does not apply where the lessee has known about the mortgage foreclosure and remained silent. *Riley v. Grissett,* 556 So. 2d 473 (Fla. 1st DCA 1990). Here the same individuals are the embodiment of all of the corporate entities involved and have known about the proceedings for all ten years. Not only are all defendants equitably estopped from asserting the leases as impediment to this foreclosure action, the court finds that raising the issue at this juncture is in bad faith, as another instance of Attorney Meacham's improper delay tactics.[15]

The Debtor appealed the order enforcing the writ of possession.[16]

While that appeal was pending, the Debtor filed for chapter 11 bankruptcy.[17] In its bankruptcy schedules, the Debtor listed its lease for the vacant lot on Schedule G.[18] According to its proposed plan, the Debtor intends on assuming the lease for the vacant lot.[19] The Debtor filed this proceeding seeking (among other things) (1) a declaration that its leasehold interest in the vacant lot had not been terminated prepetition (Count I);[20] and (2) to quiet title to the vacant lot (Count II).[21]

---

[15] *Id.* at Ex. J, p.4.

[16] *Id.* at ¶ 39.

[17] *Id.* at ¶¶ 39, 41.

[18] *Id.* at ¶ 41.

[19] *Id.* at ¶ 42.

[20] *Id.* at ¶¶ 49 – 60.

[21] *Id.* at ¶¶ 61 – 69. In the alternative, the Debtor alleges that, if the Court determines the Debtor's leasehold interest was terminated, the termination is avoidable under Bankruptcy Code § 548 (Count III). *Id.* at ¶¶ 70 – 73. The Debtor's complaint also includes an objection to PV-SoHo's proof of claim in the main bankruptcy case (Count IV). *Id.* at ¶¶ 74 – 78.

PV-SoHo, which now owns the vacant lot, has moved to dismiss the Debtor's declaratory judgment and quiet title counts because, according to PV-SoHo, they are barred by the *Rooker-Feldman* doctrine and collateral estoppel.[22] The Debtor argues that *Rooker-Feldman* does not apply because "there is not now and never has been a final judgment of foreclosure entered by a state court that actually foreclosed out the Debtor's [l]easehold in the [p]roperty."[23]

According to the Debtor, the state court foreclosure judgment does not foreclose out its leasehold interest because it is void.[24] The judgment is void, the Debtor says, because the Debtor was never named in the foreclosure complaint or served with a copy of it.[25]

---

[22] Adv. Doc. No. 9, ¶¶ 44 – 50. PV-SoHo has also moved to dismiss the Debtor's fraudulent transfer claim, as well as its objection to PV-SoHo's proof of claim, for failure to state a cause of action. *Id.* at ¶¶ 67 – 78.

[23] Adv. Doc. No. 17, ¶ 6. The Debtor also argues that there has never been a writ of possession that terminated its leasehold interest in the property. If, as is the case, the foreclosure judgment terminated the leasehold interest, then the writ of possession is irrelevant. Because the Court has determined, for the reasons set forth below, that the foreclosure judgment terminated the Debtor's leasehold interest, the Court need not address the Debtor's argument that the writ of possession did not terminate the Debtor's leasehold interest.

[24] Adv. Doc. No. 17, ¶ 12. The Debtor also argues that the language of the final judgment "does not reference the Debtor's interest" and "does not name the Debtor's interest." Adv. Doc. No. 22 at p. 22, ll. 7 – 16. The final judgment does, in fact, reference the Debtor's interest indirectly: the final judgment provides that Whitney Bank's mortgage is "superior in dignity to any right, title, interest or claim of the defendants *and all persons, corporations, or other entities claiming by, through, or under any of them*." Adv. Doc. No. 21, Ex. A, ¶ 6. (emphasis added). The Debtor, of course, is claiming through BAMC Development—one of the named defendants.

[25] *Id.*

## II.    Conclusions of Law.

As a matter of state law, the Debtor has a point: ordinarily, a "judgment entered without service of process is void and will be set aside and stricken from the record on motion at any time."[26] So, assuming the Debtor was not served, the Debtor has an argument the judgment may be void. But, as this Court explained in *In re Namal Enterprises*, "the *Rooker-Feldman* doctrine generally recognizes that federal district courts lack jurisdiction to review state court judgments."[27]

The *Rooker-Feldman* doctrine applies when the losing party in state court sues in federal court seeking review of a state court judgment after the state court proceedings had ended.[28] On its face, this appears to be the textbook case for the *Rooker-Feldman* doctrine: the Debtor lost in state court when a foreclosure judgment was entered foreclosing the Debtor's interest in the property; the final judgment was affirmed on appeal; the Debtor now challenges the effect of the state court foreclosure judgment. In other words, this case involves the losing party in a state

---

[26] *M.L. Builders, Inc. v. Reserve Devs., LLP*, 769 So. 2d 1079, 1081 (Fla. 4th DCA 2000) (quoting *Kennedy v. Richmond*, 512 So. 2d 1129, 1130 (Fla. 4th DCA 1987)); *see also Williams v. Taylor*, 306 So. 3d 164, 167 (Fla. 3d DCA 2020) ("A void judgment is one that is entered, for example, without subject matter or personal jurisdiction, such as where there is lack of service of process."); *90 CWELT-2008, LLC v. Yacht Club at Portofino Condo. Ass'n, Inc.*, 245 So. 3d 925, 927 (Fla. 3d DCA 2018) (explaining that "[i]t is well settled that a judgment entered without due service of process is void.") (quoting *Del Conte Enters., Inc. v. Thomas Publ'g Co.*, 711 So. 2d 1268, 1269 (Fla. 3d DCA 1998)).

[27] 574 B.R. 300, 306 (Bankr. M.D. Fla. 2017).

[28] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

court proceeding asking a federal court to review a state court final judgment that was upheld on appeal.

Even so, the Debtor contends that "*Rooker-Feldman* should only be invoked narrowly to ensure that litigants whose claims are properly within the cognizance of the courts are not denied a hearing."[29] In support of that contention, the Debtor relies on the Eleventh Circuit's decision three years ago in *Target Media Partners v. Specialty Marketing Corp.*[30]

In *Target Media*, the Eleventh Circuit revisited the *Rooker-Feldman* doctrine in light of the United States Supreme Court's 2005 decision in *Exxon Mobil v. Saudi Basic Industries Corp.*[31] There, the Supreme Court complained that federal courts had been applying *Rooker-Feldman* too broadly.[32] Thus, in *Target Media*, the Eleventh Circuit explained that, in light of *Exxon Mobil*, it has "declined to apply [its] previous test for *Rooker-Feldman* analysis and [has] instead hewn closely to the language of *Exxon Mobil*."[33]

---

[29] Adv. Doc. No. 17, ¶ 11.

[30] *Id.* (citing *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279 (11th Cir. 2018)).

[31] 881 F.3d 1279, 1285 (11th Cir. 2018) (discussing *Exxon Mobil*).

[32] *Exxon Mobil*, 544 U.S. at 283 ("[T]he [*Rooker–Feldman*] doctrine has sometimes been construed to extend far beyond the contours of the *Rooker* and *Feldman* cases."); *Target Media*, 881 F.3d at 1285 ("More recently, the Supreme Court concluded that the inferior federal courts had been applying *Rooker–Feldman* too broadly.").

[33] 881 F.3d at 1285.

In hewing closely to *Exxon Mobil*, the Eleventh Circuit now applies *Rooker-Feldman* only when a party who lost in state court asks a federal court to review and reject a state court's judgment.[34] To determine whether a losing party is asking a federal court to reject a state court judgment, the Eleventh Circuit considers whether the claim was actually adjudicated by the state court or "inextricably intertwined" with a state court judgment.[35] A claim is not "inextricably intertwined" with a state court judgment—and *Rooker-Feldman* therefore would not be a bar to this Court reviewing the state court judgment—if there was no "reasonable opportunity to raise" the claim during the state court proceeding.[36]

While the Debtor doesn't say it explicitly, the argument seems to be that the Debtor did not have a "reasonable opportunity to raise" its claim because it was not named as a defendant in the foreclosure complaint or served with a copy of it.[37] The Court disagrees.

As a factual matter, the Debtor did have an opportunity to raise its claims. Start with the fact that the Debtor's principal and registered agent (who, in some capacity, are representative of BAMC Development) were both named as defendants

---

[34] *Id.* at 1285 – 86.

[35] *Id.* at 1286.

[36] *Id.*

[37] Adv. Doc. No. 17, ¶¶ 11 – 23.

and served with a copy of the complaint in the foreclosure proceeding.[38] So the Debtor had actual notice. What's more, while the Debtor opted to do nothing during the first eight years the foreclosure action was pending, it did eventually seek—and was permitted—to intervene in the foreclosure action.

In any event, the Debtor is, in essence, arguing for an exception to the *Rooker-Feldman* doctrine when a state court judgment is void for lack of service of process:

> Essentially, *Rooker-Feldman* does not bar challenges to a "collateral attack" against a judgment that is void or entered without sufficient personal or subject[-]matter jurisdiction.[39]

But the Eleventh Circuit rejected that argument more than a decade ago in *Casale v. Tillman*.[40]

There, the Eleventh Circuit acknowledged that other circuits have recognized an exception to the *Rooker-Feldman* doctrine for judgments that are void, but it noted that the Eleventh Circuit has never adopted such an exception:

> While the Supreme Court's recent *Rooker–Feldman* decisions have noted the "narrowness" of the rule, they have also confirmed that it continues to apply with full force to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Other circuits have recognized an exception to the doctrine where the state court judgment is 'void *ab initio* due to the

---

[38] Adv. Doc. No. 8, Exs. C, F & J; Adv. Doc. No. 22, p. 16, ll. 1 – 9.

[39] Adv. Doc. No. 17, ¶ 11.

[40] 558 F.3d 1258, 1261 (11th Cir. 2009).

state court's lack of jurisdiction," but our circuit has never adopted that exception.[41]

To be sure, *Casale* was decided in 2009—nearly a decade before the Eleventh Circuit revisited the *Rooker-Feldman* doctrine in *Target Media*. But nothing in *Target Media* suggests the Eleventh Circuit was intending to adopt an exception to the *Rooker-Feldman* doctrine. Had the Eleventh Circuit intended to do so, it almost certainly would have done so explicitly.

And since *Target Media*, at least one federal court has ruled that the Eleventh Circuit does not recognize an exception to *Rooker-Feldman* for judgments that are void.[42] In that case, *Connor v. Midland Credit Management, Inc.*, Midland had obtained an arbitration award against Connor and later confirmed the arbitration award in state court—both by default.[43] Connor later sued Midland for allegedly violating federal and state fair-debt-collection-practices laws.[44] Because Midland was not licensed to collect debts in Florida, Connor alleged the judgment was void and therefore any attempt to collect on it was unlawful.[45]

Midland moved to dismiss Connor's claims based on the *Rooker-Feldman* doctrine: Midland argued Connor was a "state-court loser" whose claims were

---

[41] *Id.*

[42] *Connor v. Midland Credit Mgmt., Inc.*, 2019 WL 717413 (S.D. Fla. 2019).

[43] *Id.* at *2 (S.D. Fla. 2019).

[44] *Id.* at *3.

[45] *Id.* at *7.

"inextricably intertwined" with the state court judgment since they depended on the state court judgment being void.[46] Relying on a "return of summons" containing a service-date error, Connor contended that she was not properly served and that the *Rooker-Feldman* doctrine therefore did not apply because she did not have a reasonable opportunity to bring her claims.[47]

The court refused to recognize an exception to the *Rooker-Feldman* doctrine in cases in which service is defective:

> The service issues, however, do not change the result. As one court within the Eleventh Circuit succinctly put it when also addressing an argument concerning lack of service of process, "the Eleventh Circuit has never recognized an exception to the *Rooker-Feldman* [doctrine] for judgments that are *void ab initio*." Thus, "a claim of faulty service does not allow a party to avoid the *Rooker-Feldman* doctrine."[48]

According to the court, "challenging a default judgment based on lack of service of process is the very definition of trying to nullify the judgment"[49]—precisely what *Rooker-Feldman* prohibits.[50]

---

[46] *Id.* at *6.

[47] *Id.* at *7.

[48] *Id.* at *8 (citations omitted).

[49] *Id.*

[50] *Target Media Partners v. Specialty Mktg. Corp.*, 881 F.3d 1279, 1285 – 86 (11th Cir. 2018) (explaining that *Rooker-Feldman* "bar[s] only those claims asserted by parties who have lost in state court and then ask the district court, ultimately, to *review and reject a state court's judgments*") (emphasis added).

### III.  Conclusion

Six months ago, the Eleventh Circuit cautioned federal courts against readily applying the *Rooker-Feldman* doctrine:

> In short, [federal] courts should keep one thing in mind when *Rooker-Feldman* is raised: it will almost never apply.[51]

Because the Debtor's claims here amount to a direct attack on the state court final judgment—the Debtor alleges the state court foreclosure judgment is *void*—this is one of the rare cases where *Rooker-Feldman* does apply. The Court will therefore enter a separate order dismissing the Debtor's declaratory judgment (Count I) and quiet title (Count II) claims with prejudice.[52]

---

Attorney Dana Robbins is directed to serve a copy of this Memorandum Opinion on all interested parties who do not receive service by CM/ECF and to file a proof of service within three days of entry of the Memorandum Opinion.

---

[51] *Behr v. Campbell*, 8 F.4th 1206, 1212 (11th Cir. 2021).

[52] The Court will also dismiss the Debtor's fraudulent transfer claim (Count III) with prejudice. Given the United States Supreme Court's ruling in *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 544 (1994), the rationale of which applies equally here, the Debtor fails to state a claim for fraudulent transfer. Just as in *BFP*, allowing a lessee to avoid the termination of its leasehold interest in property sold at a foreclosure sale would create a cloud on every such piece of property. *Id.* ("Nor is there any doubt that the interpretation urged by petitioner would have a profound effect upon that interest: The title of every piece of realty purchased at foreclosure would be under a federally created cloud."). Because the Court is dismissing Counts I – III with prejudice, the Debtor can state its objection to PV-SoHo's proof of claim (Count IV) in the main case. So Count IV will be dismissed, too.

**J. Ellsworth Summers, Jr., Esq.**
**Dana L. Robbins, Esq.**
**Burr & Forman**
   *Counsel for PV-SoHo, LLC*

**David S. Jennis, Esq.**
**Daniel E. Etlinger, Esq.**
**Jennis Morse Etlinger**
   *Counsel for the Debtor*