ORDERED.

**Dated:  July 31, 2024**

*Caryl E. Delano*
Caryl E. Delano
Chief United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
www.flmb.uscourts.gov

In re:                                                    Case No. 8:21-bk-02578-CED
                                                          Chapter 11
2408 W. Kennedy LLC,

      Debtor.
_____/

2408 W. Kennedy LLC,                          Adv. No. 8:21-ap-00288-CED

      Plaintiff,

v.

Bank of Central Florida,
a Florida Banking Corporation,

      Defendant.
_____/

## ORDER GRANTING DEFENDANT'S
## MOTION TO DISMISS, OR ALTERNATIVELY, FOR SUMMARY JUDGMENT

The issue before the Court is whether the *Rooker-Feldman* doctrine and res

judicata and collateral estoppel principles apply to a state court's rulings to bar

Debtor's claims in this adversary proceeding. For the reasons that follow, the Court concludes that *Rooker-Feldman*, res judicata, and collateral estoppel apply. Therefore, the Court will dismiss Debtor's complaint for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine or, in the alternative, grant summary judgment in favor of the Defendant on each of Debtor's claims.

## I.      FLORIDA FORECLOSURE PROCEDURES

Understanding the parties' dispute requires basic knowledge of Florida foreclosure law.

Unless otherwise ordered by the court, Florida judicial sales are governed by §§ 45.031 and 45.0315-45.035, Florida Statutes.[1] Section 45.031(1)(a) requires a final foreclosure judgment to direct the clerk to sell the foreclosed-upon property at a public sale on a specified day on the terms and conditions set forth in the judgment. At the conclusion of the foreclosure sale, the clerk is required to issue a "certificate of sale" to the high bidder.[2]

Under § 45.031(5), a party may object to the foreclosure sale within 10 days of the date of the certificate of sale. The substance of an objection to a foreclosure sale under § 45.031(5) must "be directed toward conduct that occurred at, or which related

---

[1] Unless otherwise stated, statutory references are to the Florida Statutes.

[2] § 45.031(4), Fla. Stat.

to, the foreclosure sale itself."[3] If no one timely objects to the sale, the clerk issues a "certificate of title" to the high bidder.[4]

When the certificate of title is filed, the sale to the high bidder stands confirmed, and title to the property "shall pass to the purchaser named in the certificate without the necessity of further proceedings or instruments."[5] The clerk then records the certificate of title.[6]

Generally, when the holder of a mortgage on real property sues to foreclose the mortgage, the foreclosing party desires to extinguish the rights of any mortgagees, lienholders, or lessees whose rights arose subsequent (or have been subordinated) to the rights of the foreclosing party. The foreclosing party accomplishes this by naming the holders of such interests as defendants in the foreclosure action.[7]

But what happens when an unknown party holds an "unrecorded" interest in the property being foreclosed upon and thus cannot be named as a defendant? The answer is found in Florida's lis pendens statute; under § 48.23, an action in any state or federal court operates as lis pendens on real property affected thereby "if a notice

---

[3] *IndyMac Fed. Bank FSB v. Hagan*, 104 So. 3d 1232, 1236 (Fla. 3d DCA 2012).

[4] § 45.031(5), Fla. Stat.

[5] § 45.031(6), Fla. Stat.

[6] *Id.*

[7] Thomas E. Baynes, Jr., *Florida Mortgages* § 11-2 (Thompson Reuters 2023) ("All junior mortgagees and lienors should be made parties in order to extinguish their rights through the foreclosure action. . . . Generally, all parties having rights in the property arising subsequent to the foreclosing party should be made a party to the suit. These parties would include lessees . . . .").

of lis pendens is recorded in the official records of the county where the property is located and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged."[8] Restated, "[a] lis pendens 'serves as constructive notice of the claims asserted against the property in the pending litigation.'"[9]

So to protect itself from the possibility of an unrecorded interest's surviving a foreclosure judgment and foreclosure sale, a foreclosing party records a notice of lis pendens to give constructive notice to third parties of the pending foreclosure case. Under § 48.23(1)(d), the holder of an unrecorded interest in real property who is not in possession of the property must move to intervene in the foreclosure action within 30 days of the foreclosing party's recordation of a lis pendens; otherwise, the holder's interest will be extinguished by the foreclosure judgment. "In other words, the only way to enforce a property interest that is unrecorded at the time the lis pendens is recorded is by timely intervening in the suit creating the lis pendens—all other actions are barred."[10]

## II.    UNDISPUTED FACTS

Debtor, the Plaintiff in this adversary proceeding, has engaged in the business of owning and operating a nightclub and bar, "The Kennedy," in Tampa, Florida.[11]

---

[8] § 48.23(1)(a), Fla. Stat.

[9] *U.S. Bank, N.A. v. Bevans*, 138 So. 3d 1185, 1189 (Fla. 3d DCA 2014).

[10] *U.S. Bank, N.A. v. Quadomain Condo. Ass'n, Inc.*, 103 So. 3d 977, 979 (Fla. 4th DCA 2012).

[11] Case No. 8:13-bk-10798-MGW, Doc. No. 11; Main Case Doc. No. 14, ¶ 2.

The dispute in this adversary proceeding involves Debtor's lease of a vacant lot on South Howard Avenue in Tampa, Florida (the "Howard Property") that Debtor used as a parking lot for The Kennedy, and whether a state court foreclosure judgment terminated Debtor's leasehold interest in the Howard Property.[12]

Fortunately, the relevant facts here are not in dispute.

### A.    Debtor leases the Howard Property.

Debtor's principals, Thomas Ortiz and Christopher Scott, are also the principals in an entity known as BAMC Development Holding, LLC ("BAMC"). Prior to the foreclosure action described below, BAMC owned the Howard Property. Whitney National Bank (the "Bank") held a note secured by a mortgage on the Howard Property;[13] Mr. Scott and Mr. Ortiz guaranteed BAMC's obligations under the note and mortgage.[14]

---

[12] Ironically, this is not Debtor's principals' first rodeo. In two other Chapter 11 cases pending before this Court, (1) after property owned by the debtor's principals or an entity related to them was foreclosed upon, the debtor appeared in the State Court foreclosure action to argue that it held an unrecorded lease on the property and was not subject to being evicted from the property, and (2) after the debtor failed to prevail on its claim in State Court (and the appeal of the State Court's ruling against it), the debtor attempted to reargue its claim in the bankruptcy court. (*In re Hop-Hedz, Inc.*, Case No. 8:20-bk-09249-CED, Doc. Nos. 273, 274 & 278; *Tampa Hyde Park Café Properties, LLC*, Case No. 8:23-bk-00448-CED, Doc. Nos. 380, 385, 388, 389 & 390.)

[13] Adv. Doc. No. 103, ¶¶ 9 – 10. Whitney National Bank originally held the note and mortgage. The note and mortgage were later sold or assigned to Biel Loanco III-A, LLC and again to Biel REO, LLC. After the mortgage was foreclosed, Biel REO was the high bidder at the foreclosure sale, and CCIC I LLC was later substituted in its place. The certificate of title was issued to CCIC, who then sold the Howard Property to Bank of Central Florida. For ease of reference, the Court will refer to Whitney National Bank's successors-in-interest as the "Bank."

[14] Adv. Doc. No. 113-8 at p. 10.

On May 20, 2008, Debtor entered into a lease of the Howard Property with BAMC (the "Lease").[15] As set forth below, the Lease was not recorded in the Official Records of Hillsborough County (the "Official Records") until February 12, 2019.

**B.    The Bank forecloses on the Howard Property.**

In 2010, the Bank sued to foreclose its mortgage (the "Foreclosure Action") in Hillsborough County Circuit Court (the "State Court") and recorded a notice of lis pendens in the Official Records.[16] The foreclosure complaint named BAMC, Mr. Ortiz, Mr. Scott, and "Unknown Tenants" as defendants.[17] Debtor was not named as a defendant.[18]

A process server's affidavits of service reflect "NON SERVICE" of the foreclosure complaint on Unknown Tenants at the Howard Property with the following comments:  "Big empty parking lot for Cheap Restaurant = vacant lot" and "Big Vacant Lot for Valet parking for Cheap Restaurant."[19] Thereafter, the Bank amended the foreclosure complaint to drop "Unknown Tenants" as defendants.[20]

---

[15] Adv. Doc. No. 103, ¶ 11.

[16] Adv. Doc. No. 103, ¶ 13; Adv. Doc. No. 113-3 at p. 2.

[17] *Id.*

[18] Adv. Doc. No. 103, ¶ 14.

[19] Adv. Doc. No. 8, ¶ 11; Adv. Doc. No. 8-2.

[20] Adv. Doc. No. 103, ¶ 17.

Although Mr. Ortiz and Mr. Scott—Debtor's principals—were named defendants in the Foreclosure Action, Debtor did not move to intervene in the Foreclosure Action within 30 days of the recordation of the Bank's lis pendens.

On July 2, 2018—eight years after the Bank initiated the Foreclosure Action—the State Court entered a uniform final judgment of foreclosure (the "Foreclosure Judgment") that scheduled a foreclosure sale for August 10, 2018.[21] The Foreclosure Judgment stated that the Bank's mortgage on the Howard Property was "superior in dignity to any right, title, interest or claim of the defendants and all persons, corporations, or other entities claiming by, through, or under the defendants or any of them."[22]

BAMC appealed the Foreclosure Judgment to Florida's Second District Court of Appeal, but did not seek a stay pending appeal.[23] However, on August 9, 2018—the day before the scheduled foreclosure sale—BAMC filed a bankruptcy case (Case No. 8:18-bk-06643-CPM), and the foreclosure sale was cancelled.[24] The Bankruptcy Court dismissed BAMC's bankruptcy case on December 28, 2018. The Bank filed a

---

[21] Adv. Doc. No. 21, Ex. A. The Bank's Foreclosure Action and other efforts to obtain possession of the Howard Property were possibly delayed, in part, due to BAMC's Chapter 11 bankruptcy filings: Case No. 8:16-05643-CPM, filed June 30, 2016, and dismissed January 5, 2017; Case No. 8:18-06643-CPM, filed August 9, 2018, and dismissed December 28, 2018; and Case No. 8:22-bk-01487-CPM, filed April 13, 2022, and converted to Chapter 7 on November 17, 2022.

[22] Adv. Doc. No. 21, Ex. A, ¶ 6.

[23] Adv. Doc. No. 113-3 at p. 1.

[24] *Id.*

motion to re-set the foreclosure sale, and the sale was scheduled for February 14, 2019 (the "Foreclosure Sale").[25]

### C.    Debtor moves to intervene in the Foreclosure Action and objects to the Foreclosure Sale.

Two days before the scheduled February 14, 2019 Foreclosure Sale, Debtor—represented by the same attorney who had represented BAMC, Mr. Ortiz, and Mr. Scott throughout the Foreclosure Action—recorded a lis pendens ("Debtor's Lis Pendens") and a copy of the Lease in the Official Records.[26] Debtor also moved to intervene in the Foreclosure Action (the "Intervention Motion").[27]

In the Intervention Motion, Debtor asked to intervene in the Foreclosure Action in order to seek the State Court's judicial declaration that (1) Debtor's leasehold interest in the Howard Property survived the Foreclosure Judgment, and (2) the purchaser at the Foreclosure Sale took the Howard Property subject to the Lease. Debtor also filed an objection to the Foreclosure Sale on the ground that the State Court needed to first consider its Intervention Motion.[28]

---

[25] Adv. Doc. No. 103, ¶ 20.

[26] Adv. Doc. No. 103, ¶ 21; Adv. Doc. No. 103-3.

[27] Adv. Doc. No. 113-1; Adv. Doc. No. 113-7 at p. 4.

[28] Adv. Doc. No. 113-1, ¶ 15; Adv. Doc. No. 113-3 at p. 2.

309 Holdings LLC ("309 Holdings")—an entity related to Mr. Scott that also asserted a leasehold interest in the Howard Property—filed its own motion for leave to intervene in the Foreclosure Action.[29]

On February 14, 2019, the State Court clerk conducted the Foreclosure Sale as scheduled, and the Bank was the high bidder.[30]

## D. The State Court rules that the Foreclosure Judgment terminated Debtor's leasehold interest in the Howard Property.

On March 5, 2019, the State Court conducted a hearing on Debtor's Intervention Motion and objection to the Foreclosure Sale (the "March 5 Hearing").[31]

In a written order entered that same day (the "Lease Termination Order"),[32] the State Court (1) granted the Intervention Motion, in part, to allow Debtor to be heard on the merits of its objections to the Foreclosure Sale; (2) found that because Debtor's objection to the Foreclosure Sale failed to allege that Debtor was in possession of the Howard Property or that Debtor had timely moved to intervene in the Foreclosure Action, Debtor was barred under § 48.23(1)(d) from enforcing any interest it may have had in the Howard Property;[33] and (3) overruled Debtor's objection to the Foreclosure

---

[29] Adv. Doc. No. 113-3 at p. 2.

[30] Adv. Doc. No. 103, ¶ 22.

[31] BAMC and 309 Holdings also filed objections to the Foreclosure Sale. Adv. Doc. No. 113-3 at pp. 2 – 3.

[32] Adv. Doc. No. 113-3.

[33] *Id.* at p. 2.

Sale because the objection addressed issues other than the irregularity of the Foreclosure Sale.[34]

Debtor timely filed a motion for rehearing of the Lease Termination Order (the "Motion for Rehearing").[35] Two days later, the State Court—noting that it had rejected Debtor's arguments on the merits and concluding that both the Intervention Motion and Motion for Rehearing were frivolous—denied the Motion for Rehearing.[36] (The Court will refer to the Lease Termination Order and the order denying the Motion for Rehearing as the "Lease Termination Orders.") Debtor did not appeal the Lease Termination Orders.

On March 6, 2019, the State Court clerk issued a certificate of title to the Bank as the purchaser of the Howard Property.[37]

### E.    Debtor is dispossessed from the Howard Property.

A year later, the Bank filed a motion for a writ of possession in the Foreclosure Action. The Bank contended that Debtor "continued to claim a right to the foreclosed property by virtue of one or more unrecorded leases."[38] On May 8, 2020, the State

---

[34] BAMC withdrew its objection to the Foreclosure Sale at the March 5 Hearing; the Lease Termination Order also applied to 309 Holding's objection to the Foreclosure Sale. Adv. Doc. No. 113-3 at pp. 2–4.

[35] Adv. Doc. No. 113-4.

[36] Adv. Doc. No. 113-5 at p. 1.

[37] Adv. Doc. No. 103, ¶ 24.

[38] *Id.* at ¶ 25.

Court granted the Bank's motion (the "Order Granting Writ") and thereafter issued a writ of possession (the "Writ of Possession").[39] On August 17, 2020, the Hillsborough County Sheriff served the Writ of Possession on (among others) BAMC, Mr. Scott, Mr. Ortiz, and "Unknown Tenants," and, according to the Sheriff's records, the Bank took possession of the Howard Property.[40]

Three months later, the Bank filed an emergency motion in State Court to enforce the Writ of Possession. The Bank alleged that Debtor's managing member— Mr. Ortiz—had threatened to cloud title to the Howard Property.[41] On November 25, 2020, the State Court entered an order granting the motion to enforce the Writ of Possession (the "Order Enforcing Writ").[42]

In the Order Enforcing Writ, the State Court observed that counsel for the defendants (including Debtor) continued to "advance baseless propositions" such as Debtor's contention that until a court adjudicated whether the Lease survived the Foreclosure Sale and whether the purchaser at the sale was bound by the sale, Debtor

---

[39] *Id.* at ¶¶ 26 & 27.

[40] *Id.* at ¶¶ 27 – 28 & Adv. Doc. No. 103-4; Adv. Doc. No. 113-6, ¶¶ 6 – 9. Debtor contends it was not personally served with the writ of possession; however, by "mov[ing] for an order requiring the Bank to immediately return possession of the Property to [Debtor]," Debtor has admitted that it was dispossessed from the Howard Property. Adv. Doc. No. 74, ¶ 16.

[41] Adv. Doc. No. 113, ¶¶ 29 & 30.

[42] Adv. Doc. No. 113-7.

"will continue to possess [the Howard Property] in accordance with [the Lease]." The

State Court responded to Debtor's contention by stating:

> *No it will not.* All parties to this case and their attorneys, and anyone claiming to hold under any of them, are ordered to peacefully leave the subject property and not interfere with execution of the writ of possession. All rights under any 2007 leases to any entities associated with or holding under any of the individual defendants are extinguished by the failure of the source of their leasehold rights to pay the mortgage on the property, and their failure to come forward to assert any such rights while they were actively engaged in litigating them.[43]

On December 11, 2020, Debtor appealed the Order Enforcing Writ to the Florida

Second District Court of Appeal (the "Writ Appeal").[44] In the Writ Appeal, Debtor

contended that the Writ of Possession was void because: (1) Debtor had neither been

named as a defendant in the Foreclosure Action nor served with the foreclosure

complaint;[45] and (2) Debtor claimed its unrecorded leasehold interest was unaffected

by the Foreclosure Judgment and § 48.23(d)(1) because Debtor was "in possession" of

the Howard Property when the Foreclosure Action was filed (but recall, the Howard

Property is a vacant lot).[46]

---

[43] *Id.* at p. 6 (emphasis added).

[44] Adv. Doc. No. 113-8 at p. 34.

[45] *Id.* at pp. 35 – 54.

[46] *Id.* at pp. 54 – 61.

**F.**    **Debtor files a Chapter 11 case and this adversary proceeding.**

On May 18, 2021, while Debtor's Writ Appeal was pending, Debtor filed this Chapter 11 case. On August 31, 2021, this Court entered an order determining that the automatic stay under 11 U.S.C. § 362 did not apply to the Writ Appeal, and to the extent the automatic stay did apply, the Court granted relief from stay for the Writ Appeal to proceed.[47] On October 28, 2022, Florida's Second District Court of Appeal affirmed, *per curiam*, the State Court's Order Enforcing Writ.[48]

Meanwhile, shortly after Debtor filed its Chapter 11 case, Debtor commenced this adversary proceeding by filing a complaint against the Bank. Primarily, Debtor sought a judicial declaration that the Lease survived the foreclosure of the Howard Property.[49] Judge Michael G. Williamson dismissed Debtor's complaint on *Rooker-Feldman* grounds, holding that the Bankruptcy Court had no jurisdiction to review the State Court's Foreclosure Judgment.[50] Debtor appealed Judge Williamson's ruling (the "*Rooker-Feldman* Appeal").[51]

While the *Rooker-Feldman* Appeal was pending, Debtor resolved other issues in its Chapter 11 case, and in August 2023, this Court confirmed Debtor's Chapter 11

---

[47] Main Case Doc. No. 159.

[48] Adv. Doc. No. 113-9.

[49] Adv. Doc. Nos. 1 & 8.

[50] Adv. Doc. No. 36.

[51] Adv. Doc. No. 63, United States District Court Case No. 8:22-cv-1080-CEH.

plan.[52] Although Debtor's plan provided for Debtor to assume and assign the Lease,[53] the Court's confirmation order stated that if the District Court in the *Rooker-Feldman* Appeal reversed Judge Williamson's ruling, Debtor's and the Bank's rights would be preserved, and the parties would litigate the issues relating to the Lease in the Bankruptcy Court.[54]

In November 2023, the District Court ruled in the *Rooker-Feldman* Appeal.[55] Reversing Judge Williamson's ruling, the District Court held that, notwithstanding that Debtor's two principals were parties to the Foreclosure Action from its inception, *Rooker-Feldman* did not apply to the Foreclosure Judgment because Debtor itself was not a party to the Foreclosure Action when the Foreclosure Judgment was entered.

The District Court then remanded this adversary proceeding to the Bankruptcy Court to consider other grounds for dismissal, including whether the *Rooker-Feldman* doctrine applies to any judgments entered *after* Debtor intervened in the Foreclosure Action or whether any of those judgments are otherwise entitled to preclusive effect.[56]

---

[52] Main Case Doc. No. 684.

[53] Main Case Doc. No. 229, § 6.01.

[54] Main Case Doc. No. 684 at pp. 25 – 26, ¶ 27(i).

[55] Adv. Doc. No. 73.

[56] *Id.* at p. 11.

On remand to the Bankruptcy Court, the Bank consented to Debtor's filing an amended complaint.[57] In Debtor's third amended complaint[58]—the operative complaint, referred to herein as the "Complaint"—Debtor asserts the following claims:

Count 1:    A judicial declaration that its leasehold interest in the Howard Property survived the Foreclosure Judgment and the Foreclosure Sale;

Count 2:    Quieting title to the Lease in Debtor;

Count 3:    Turnover of the Howard Property under § 542 of the Bankruptcy Code;[59]

Count 4:    Breach of the Lease for failure to deliver possession of the Howard Property to Debtor; and

Count 5:    Unjust enrichment of the use and enjoyment of the Howard Property.[60]

Debtor did not attach copies of the following documents as exhibits to the Complaint:  the transcript from the March 5 Hearing; the Lease Termination Orders; the Order Enforcing Writ; and any evidence of the Writ Appeal.

---

[57] Adv. Doc. No. 97 at p. 11, l. 12 – p. 13, l. 15.

[58] Adv. Doc. No. 103.

[59] 11 U.S.C. § 542.

[60] The Complaint also includes an objection to the Bank's proof of claim – Adv. Doc. No. 103, pp. 12 – 13.

**G.    The Bank moves to dismiss the Complaint or, in the alternative, for summary judgment.**

On March 13, 2024, the Bank filed its *Motion to Dismiss Third Amended Complaint and Objection to Claim No. 16, or in the Alternative, Motion for Summary Judgment* (the "Motion").[61]

The Bank seeks dismissal primarily on two grounds:[62]

First, the Bank contends that the *Rooker-Feldman* doctrine applies to the State Court's Lease Termination Orders and the Order Enforcing Writ, such that Debtor's claims in the Complaint are barred.[63]

And second, the Bank argues that Debtor's claims in the Complaint (except for Count 3, the turnover claim under 11 U.S.C. § 542) are barred by the doctrine of res judicata and that all Debtor's claims—including Count 3—are barred by collateral estoppel.[64]

---

[61] Adv. Doc. No. 113.

[62] In addition to seeking dismissal on *Rooker-Feldman*, res judicata, and collateral estoppel grounds, the Bank also contends Debtor cannot state a claim for relief because the record is devoid of any evidence that Debtor renewed the Lease before it expired (Adv. Doc. No. 113 at pp. 28 – 29). Debtor disputes that contention and has moved to amend its complaint to allege that it has renewed the Lease or, in the alternative, to supplement the record to include evidence of the Lease renewals (Adv. Doc. No. 123 – the "Motion to Supplement"). However, the Court need not address the Lease-renewal issue because, for the reasons explained below, the Court concludes that (1) the *Rooker-Feldman* doctrine bars it from adjudicating Debtor's claims; and (2) Debtor's claims are barred by res judicata and collateral estoppel. By separate order, the Court will deny Debtor's Motion to Supplement as moot.

[63] Adv. Doc. No. 113 at pp. 15 – 18.

[64] *Id.* at pp. 19 – 27.

The Bank asks the Court, to the extent the Court considers evidence beyond the four corners of the Complaint—such as the March 5 Hearing transcript, the Lease Termination Orders, and the Order Enforcing Writ—to treat the Motion as a motion for summary judgment and to enter judgment in its favor as a matter of law on each of the counts in the Complaint.[65]

The Court entered a scheduling order memorializing the parties' agreed-upon briefing schedule (the "Scheduling Order").[66] Under the Scheduling Order, Debtor was provided with 21 days from the date of Motion to file its response; the parties later agreed to extend Debtor's response deadline by five days.[67]

In its response to the Motion,[68] Debtor argues the following:

First, Debtor contends that *Rooker-Feldman* does not apply because Debtor has not asked the Court to reject the Lease Termination Orders or the Order Enforcing Writ.[69] Rather, Debtor (incorrectly) contends that (1) neither the Lease Termination Orders nor the Order Enforcing Writ contain any finding that the Lease was terminated by the Foreclosure Judgment;[70] (2) to the extent the Order Enforcing Writ

---

[65] *Id.* at pp. 2 – 3.

[66] Adv. Doc. No. 115.

[67] Adv. Nos. 117 & 119.

[68] Adv. Doc. No. 118.

[69] *Id.* at at pp. 2 – 7.

[70] *Id.* at pp. 3 – 4.

extinguished a leasehold interest, it extinguishes a "2007 lease" belonging to 309 Holdings;[71] and, (3) even if the Lease was extinguished by the State Court rulings, Debtor still has the right to assume the Lease.[72]

Second, Debtor argues the doctrine of res judicata does not apply because, Debtor contends, (1) the State Court never entered a final judgment determining the Lease was not assumable; (2) Debtor was not originally a party to the Foreclosure Action, and the Bank objected to its request to intervene and seek a declaration that its leasehold interest survived the Foreclosure Judgment; and (3) Debtor never had the opportunity to present evidence that its leasehold interest survived the Foreclosure Judgment.[73]

Third, Debtor contends that the collateral estoppel doctrine does not apply because it never had a full and fair opportunity to litigate whether its leasehold interest survived the Foreclosure Judgment.[74] Debtor also contends (incorrectly) that the Lease Termination Order is devoid of any finding that Debtor's leasehold interest was extinguished.[75]

---

[71] *Id.* at at p. 3.

[72] *Id.* at pp. 4 – 6.

[73] *Id.* at pp. 7 – 10.

[74] *Id.* at pp. 10 – 11.

[75] *Id.* at pp. 9 – 11.

### III.    ANALYSIS

In ruling on a motion to dismiss, the Court "must accept as true all of the allegations in the complaint," but it does not have to accept as true a plaintiff's legal conclusions, which must be supported by factual allegations.[76] Ordinarily, in ruling on a motion to dismiss, the Court may not consider evidence beyond the four corners of the Complaint.[77]

However, because the Bank challenges this Court's subject-matter jurisdiction, the Court may consider evidence outside the pleadings,[78] including the two Lease Termination Orders and the Order Enforcing Writ.

Alternatively, if the Court has jurisdiction, the Court may consider matters outside the pleadings under Rule 12(d) by treating the motion to dismiss as a motion for summary judgment under Rule 56, provided that parties are given a reasonable opportunity to present all material that is pertinent to the motion.[79]

Here, the title of the Bank's Motion put Debtor on notice of the Bank's alternative request for summary judgment. And the parties' agreed-upon Scheduling Order, Debtor's motion for an extension of time to respond to the Motion, and the

---

[76] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[77] *Austin v. Modern Woodman of Am.*, 275 F. App'x 925, 926 (11th Cir. 2008) ("A court is generally limited to reviewing what is within the four corners of the complaint on a motion to dismiss.") (citation omitted).

[78] *Flournoy v. Gov't Nat'l Mortg. Ass'n*, 156 F. Supp. 3d 1375, 1378 (S.D. Fla. 2016).

[79] Fed. R. Civ. P. 12(d).

Court's order granting Debtor's requested extension all refer to the Bank's alternative "Motion for Summary Judgment."[80] In all, Debtor had 26 days to present pertinent material in opposition to the Bank's Motion, which the Court finds is a reasonable time period. So the Court will treat the Bank's Motion as one for summary judgment and will consider the Lease Termination Orders and the Order Enforcing Writ.

Under Rule 56(a), summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[81] For issues on which the movant bears the burden of proof, the movant must come forward with credible evidence that, if not controverted at trial, would entitle the movant to a directed verdict. But for issues on which the nonmovant bears the burden at trial, the moving party may either show that there is an absence of evidence to support the non-moving party's claim or come forward with affirmative evidence showing that the non-moving party will be unable to prove its claim or defense at trial. If the moving party carries its initial burden, the responsibility shifts to the non-moving party to show the existence of a genuine issue of material fact.[82]

---

[80] Adv. Doc. Nos. 115, 117 & 119.

[81] Fed. R. Civ. P. 56(a).

[82] *In re Yablonowski*, 2022 WL 973417, at *2 (Bankr. M.D. Fla. Mar. 31, 2022) (citing *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-16 (11th Cir. 1993); *In re Fields*, 2018 WL 1616840, at *2 (Bankr. M.D. Fla. Mar. 30, 2018)).

For the reasons set forth below, the Court finds that under the *Rooker-Feldman* doctrine, the Court lacks subject matter jurisdiction over the Complaint. Alternatively, if the Court has jurisdiction, the Court finds that Debtor's claims are barred by principles of res judicata and collateral estoppel.

### A.   The *Rooker-Feldman* doctrine bars Debtor's claims.

As the Eleventh Circuit explained in *Behr v. Campbell*, the *Rooker-Feldman* doctrine "establishes that a party who loses a case in state court cannot appeal that loss in a federal district court."[83] The doctrine—which finds its roots in the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.* and *D.C. Court of Appeals v. Feldman*— holds that state court litigants "cannot come to federal district courts 'complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'"[84] Put another way, "state court litigants do not have a right of appeal in the lower federal courts."[85] And, most importantly, if the *Rooker-Feldman* doctrine applies to a state court judgment, the federal court lacks jurisdiction to review that judgment.[86]

---

[83] 8 F.4th 1206, 1208 (11th Cir. 2021).

[84] *Id.* at 1209 – 10 (citing *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983)).

[85] *Id.*

[86] *Id.* at 1208.

21

Under Supreme Court and Eleventh Circuit precedent, the *Rooker-Feldman* doctrine applies when (1) parties to the federal case are the same as the parties to the state court action;[87] (2) the state court judgment is final—meaning the time for an appeal has run or that any appeal has been decided—at the time the federal court action was commenced;[88] and (3) the "state court loser" invites the federal court to review and reject the state court judgment.[89]

### 1. The parties in this adversary proceeding are the same as the parties to the State Court Foreclosure Action.

When Debtor filed the Intervention Motion, it asked the State Court to make it a party to the Foreclosure Action. The State Court granted Debtor's request in part, and starting March 5, 2019, Debtor was a party to the Foreclosure Action, including its prosecution of the Writ Appeal. Likewise, the Bank, through its predecessors in interest, was a party to the Foreclosure Action and to this adversary proceeding.[90]

---

[87] *2408 W. Kennedy, LLC v. Bank of Central Florida*, 654 B.R. 814, 819 ("In other words, the doctrine 'does not apply when the parties to the federal case are not the same as the parties to the state case.'") (quoting *In re Hazan*, 10 F.4th 1244, 1250 (11th Cir. 2021)).

[88] *Nicholson v. Shafe*, 558 F.3d 1266, 1280 (11th Cir. 2009) ("We hold that, in light of *Exxon Mobil*, state proceedings have not ended for purposes of *Rooker–Feldman* when an appeal from a state court judgment remains pending in state court at the time that the state court loser commences the federal court action.").

[89] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Nicholson*, 558 F.3d at 1274.

[90] *Quicken Loans Inc. v. Newland Court Condo. Ass'n*, 2020 WL 1694381, at *4 n. 7 (D. Colo. Apr. 6, 2020) ("[T]he Tenth Circuit has indicated that *Rooker-Feldman* applies to successors in interest to parties in the state court lawsuit.").

**2.     The Lease Termination Orders, the Order Granting Writ, and the Order Enforcing Writ are "final" for *Rooker-Feldman* purposes.**

The State Court entered four orders after Debtor became a party to the Foreclosure Action on March 5, 2019:  the two Lease Termination Orders; the Order Granting Writ; and the Order Enforcing Writ. The Court finds that the Lease Termination Orders and the Order Granting Writ are final for *Rooker-Feldman* purposes.

Although not necessary to the Court's ruling, the Court notes that *Rooker-Feldman* does not apply to the Order Enforcing Writ because Debtor's appeal of that order was pending when Debtor filed its Chapter 11 bankruptcy case.[91]

**3.     Debtor asks this Court to review and reject the Lease Termination Orders.**

The Eleventh Circuit's ruling in *In re Dorand*, is instructive.[92] In *Dorand,* creditors obtained a prepetition judgment against the debtor in Alabama state court. The creditors began collection proceedings, resulting in a writ of garnishment against the debtor's individual retirement account at Morgan Stanley. The debtor moved to

---

[91] Technically, for *Rooker-Feldman* purposes, the Order Enforcing Writ is not "final," and *Rooker-Feldman* does not apply to it. However, as a practical matter, there would be no point to a bankruptcy court's lifting the automatic stay to permit a state appellate court to conclude the appeal of a pre-bankruptcy state court order only to turn around and not give preclusive effect to the appellate court's ruling. That said, this Court does not need to address this issue in its *Rooker-Feldman* analysis.

[92] *The Ala. Creditors v. Dorand (In re Dorand)*, 95 F.4th 1355 (11th Cir. 2024).

quash the writ and claimed that the retirement account was exempt under Alabama state law.

The Alabama court denied the claim of exemption; entered judgment against Morgan Stanley for the value of the account; authorized Morgan Stanley to set off funds in the debtor's retirement account against the judgment; and directed Morgan Stanley to remit the funds in the account to the clerk of court. After the debtor unsuccessfully sought relief in the trial court and state supreme court, the judgment became final.

Morgan Stanley liquidated the account but did not remit the funds to the clerk of court. While the funds were still held by Morgan Stanley, the debtor, now a Florida resident, filed a Chapter 7 bankruptcy petition and claimed the funds as his exempt property under Florida law. The Florida bankruptcy court determined that the retirement account was exempt property and that the Alabama judgment against Morgan Stanley did not affect the account's exempt status.

On direct appeal, the Eleventh Circuit held that *Rooker-Feldman* did not apply and that the bankruptcy court had jurisdiction to decide whether the retirement account was exempt. The court explained neither party had asked the bankruptcy court to "modify" or "overturn" the Alabama judgment. Rather, the parties disputed the "effect" of the judgment, with the creditors arguing that the judgment extinguished the debtor's interest in the retirement account, and the debtor

contending that it had not. The Eleventh Circuit stated that "those arguments about the effect of the Alabama judgment are not invitations to overrule it."[93]

The facts presented here are far different. Hypothetically, if Debtor had filed its Chapter 11 case after entry of the Foreclosure Judgment and before entry of the two Lease Termination Orders, it could have argued that it filed the Complaint to ask the Court to determine the "effect" of the Foreclosure Judgment. If that were the case, under *Dorand*, this Court would have jurisdiction to determine the effect of the Foreclosure Judgment.

But that's not what happened. Instead, Debtor filed the Intervention Motion and asked the State Court to determine that its leasehold interest had not been terminated by the Foreclosure Judgment. And the State Court made that determination when it ruled that Debtor's unrecorded leasehold interest had been terminated by the Foreclosure Judgment under § 48.23(1)(d) because (a) the Lease was not recorded, (b) Debtor did not allege that it was in possession of the Howard Property, and (c) Debtor did not move to intervene in the Foreclosure Action within 30 days of the Bank's filing its lis pendens. In other words, the State Court determined the *effect* of the Foreclosure Judgment and corroborated its ruling in the Order Enforcing Writ – an order affirmed by the Florida Second District Court of Appeal.

---

[93] *Id.* at 1362.

In *Behr v. Campbell*, the Eleventh Circuit explained that a state court loser cannot circumvent the *Rooker-Feldman* doctrine simply by calling its federal court claim something other than an appeal of a state court judgment.[94] Rather, the issue is whether the injury the state court loser complains of was caused by the state court judgment itself.[95] When the federal court makes that determination, "[t]he question isn't whether the whole complaint seems to challenge a previous state court judgment, but whether resolution of each individual claim requires review and rejection of a state court judgment."[96]

Following the Eleventh Circuit's directive in *Behr*, the Court must follow a "claim by claim" approach and determine whether each of Debtor's claims in the Complaint requires this Court's review and rejection of a state court judgment.

In Count 1, Debtor seeks a judicial declaration that its leasehold interest in the Howard Property survived the Foreclosure Judgment and the Foreclosure Sale — precisely the issue addressed by the State Court in the Lease Termination Orders.

Debtor argues that this Court could rule in its favor on Count 1 without reviewing and rejecting the Lease Termination Orders because those orders are "devoid of any finding or ruling by the state court that the Lease [was] terminated."[97]

---

[94] 8 F.4th at 1212.

[95] *Id.*

[96] *Id.* at 1213.

[97] Adv. Doc. No. 118 at p. 3.

But Debtor is wrong:  the Lease Termination Orders *specifically* hold that Debtor's failure to intervene in the Foreclosure Action within 30 days from the Bank's recording of its lis pendens or to allege that Debtor was in possession of the Howard Property "'constitute[d] a bar to the enforcement against the property' of any interest" that Debtor had in the Howard Property.[98]

The remaining four counts of Debtor's Complaint—which seek to quiet title as to Debtor's leasehold interest, to direct the Bank's turnover of possession of the Howard Property, for damages against the Bank for its failure to turn over possession of the Howard Property, and for damages for the Bank's use and possession of the Howard Property—all depend on whether Debtor first prevails on Count 1.

Thus, there is no question that (a) the State Court found in its Lease Termination Orders that Debtor's leasehold interest in the Howard Property was terminated by the Foreclosure Judgment and subsequent Foreclosure Sale; and (b) in order for this Court to rule in Debtor's favor on its claims in Debtor's Complaint, this Court would have to reject the Lease Termination Orders.

Having carefully considered the Eleventh Circuit's explanations in *Dorand* and *Behr* of the *Rooker-Feldman* doctrine's limitations, the Court concludes that *Rooker-*

---

[98] Adv. Doc. No. 113-3 at p. 3.

*Feldman* applies to the Lease Termination Orders and this Court lacks jurisdiction to afford relief to Debtor.

**B.      Alternatively, if *Rooker-Feldman* does not apply to the Complaint, res judicata and collateral estoppel warrant summary judgment.**

As the Eleventh Circuit explained in *Behr*, claims that do not warrant application of the *Rooker-Feldman* doctrine "can and should be addressed by other preclusion or abstention doctrines."[99]

**1.      Res judicata applies to Counts 1, 2, 4, and 5 of the Complaint.**

The Bank contends that Debtor's claims, except Count 3 for turnover, which is a bankruptcy-specific claim under § 542 of the Bankruptcy Code[100] that could not have been brought under state law, are barred by the doctrine of res judicata, frequently referred to as "claim preclusion."[101]

Under Florida law, res judicata bars relitigation of a claim in a later case when (a) a court of competent jurisdiction; (b) renders a final judgment on the merits in the earlier case; (c) both cases involve the same parties or their privies; and (d) both cases

---

[99] 8 F.4th at 1212.

[100] 11 U.S.C. § 542.

[101] *In re Friends of Citrus & The Nature Coast, Inc.*, 2024 WL 838035, at *5 (Bankr. M.D. Fla. 2024) ("The doctrine of res judicata bars a party from relitigating claims that were—or that could have been—fully litigated in a previous action and decided on the merits."). But, as discussed below, collateral estoppel bars Debtor from relitigating whether its leasehold interest survived the Foreclosure Judgment, which is fatal to Debtor's turnover claim.

involve the same claim.[102] The Bank acknowledges that Count 3 (seeking relief under § 542 of the Bankruptcy Code) is not a claim that was litigated in the Foreclosure Action.

For the following reasons, the Court concludes that res judicata applies to Counts 1, 2, 4, and 5 of the Complaint.

### a.    The State Court is a court of competent jurisdiction.

It is undisputed that the State Court had jurisdiction over the Foreclosure Action. Thus, the "court of competent jurisdiction" element is met.

### b.    The Lease Termination Orders and the Order Enforcing Writ are "final judgments" on the merits.

Florida courts recognize that "res judicata applies to matters raised by motion."[103] Directly applicable to the issue before this Court, the Fifth Circuit Court of Appeals in *Castro Convertible Corp. v. Castro* held that "Florida courts appear to accept the more general proposition that the dispositive issue for res judicata purposes is whether there has been an *adjudication of the substance of the claim*, not the form of the order issued."[104]

---

[102] *Eastman Kodak Co. v. Atlanta Retail, Inc. (In re Atlanta Retail, Inc.)*, 456 F.3d 1277, 1285 (11th Cir. 2006).

[103] *AGB Oil Co. v. Crystal Exploration & Prod. Co.*, 406 So. 2d 1165, 1167 (Fla. 3d DCA 1981) (citing *Hann v. Carson*, 462 F. Supp. 854 (M.D. Fla. 1978); V*olkswagen Ins. Co. v. Taylor*, 201 So. 2d 624 (Fla. 1st DCA 1967); *Malicoat v. LaChappelle*, 390 So. 2d 481 (Fla. 4th DCA 1980)).

[104] 600 F.2d 545, 545 – 46 (5th Cir. 1979) (emphasis added).

Here, the State Court's consideration of Debtor's Intervention Motion and its rulings in the Lease Termination Orders and the Order Granting Writ adjudicated the substance of Debtor's claim because Debtor, in its Intervention Motion, sought the State Court's determination that its leasehold interest in the Howard Property survived the Foreclosure Judgment. The State Court rejected Debtor's claim on the merits when it ruled in the Lease Termination Orders that under § 48.23(1)(d), Debtor's failure to intervene in the Foreclosure Action within 30 days from the Bank's recording of the lis pendens or to allege that it was in possession of the Howard Property "'constitute[d] a bar to the enforcement against the property' of any interest."[105]

Debtor did not appeal the Lease Termination Orders. And although Debtor did appeal the State Court's Order Enforcing Writ, that order has been affirmed on appeal and is a final order. Thus, the Lease Termination Orders and the Order Enforcing Writ are final judgments on the merits, and this element is met.

### c.    Both cases involve the same parties or their privies.

In the Lease Termination Orders, the State Court granted Debtor's Intervention Motion to the limited extent of making Debtor a party to the Foreclosure Action. The Bank, through its predecessors-in-interest, was also a party to the Foreclosure Action.

---

[105] Adv. Doc. No. 113-3 at p. 3.

Both Debtor and the Bank are parties to this adversary proceeding. Thus, the "identity of parties" element is met.

> **d.    Debtor's claims in the Foreclosure Action and in this adversary proceeding are the same.**

As the bankruptcy court explained in *In re All American Semiconductor*, "[i]f a case arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action, [then] the two cases are really the same 'claim' or 'cause of action' for purposes of res judicata."[106] Here, Debtor's claims in the Foreclosure Action, as articulated by Debtor in the Intervention Motion and Counts 1, 2, 4, and 5 of the Complaint, arise out of the same nucleus of operative facts:  BAMC's ownership of the Howard Property, Debtor's lease of the Howard Property from BAMC, and the Bank's foreclosure of BAMC's interest in the Howard Property without having named Debtor as a defendant in the Foreclosure Action.

Thus, the "identity of claims" element is met. And because all four elements are met, the doctrine of res judicata bars Debtor from relitigating Counts 1, 2, 4, and 5 in this proceeding.

---

[106] 427 B.R. 559, 567 (Bankr. S.D. Fla. 2010) (citing *Kaiser Aerospace v. Teledyne Indus., Inc. (In re Piper Aircraft Corp.)*, 244 F.3d 1289, 1299 (11th Cir. 2001)).

**2.    Debtor is collaterally estopped from relitigating the issue of whether its leasehold interest was extinguished.**

Collateral estoppel, frequently referred to as "issue preclusion," bars relitigation of issues "actually adjudicated in [a] prior suit."[107] "To determine whether collateral estoppel applies to a Florida state court judgment, this Court applies Florida law."[108] Under Florida law, collateral estoppel applies if (a) the issue to be decided is identical to the issue decided in the state court litigation, (b) the issue was actually litigated in the state court litigation, (c) the prior determination of the issue was a critical and necessary part of the state court judgment, and (d) the standard of proof in the state court litigation was at least as high as it is in this proceeding.[109]

For the following reasons, the Court concludes that collateral estoppel applies to the Lease Termination Orders and the Order Enforcing Writ.

**a.    The issue to be decided by this Court is identical to the issue in the Foreclosure Action.**

Debtor asks the Court to determine that its rights under the Lease were not terminated by the Foreclosure Judgment. But this is the exact issue that Debtor raised in the State Court when it filed the Intervention Motion and its Motion for

---

[107] *In re Bhairo*, 630 B.R. 865, 869 (Bankr. M.D. Fla. 2021).

[108] *Benz Research & Dev. Corp. v. Ebrahimpour (In re Ebrahimpour)*, 630 B.R. 643, 648 (Bankr. M.D. Fla. 2021).

[109] *Id.*

32

Rehearing—and that the State Court addressed in the two Lease Termination Orders and the Order Enforcing Writ.

Debtor argues there is no identity of issues because the State Court never considered or decided whether Debtor could assume the Lease under § 365 of the Bankruptcy Code.[110] But Debtor overlooks that the Complaint does not request a determination that the Lease is assumable. And even if it did, a debtor cannot assume a lease that was terminated by operation of a foreclosure judgment and foreclosure sale.

Thus, the Court concludes the "identity of issues" element is met.

**b.**     **The issue was actually litigated in the State Court Foreclosure Action.**

Debtor contends the issue of whether its rights under the Lease were extinguished by the Foreclosure Judgment was not actually litigated because it was never allowed to intervene in the Foreclosure Action.

But the record here belies Debtor's argument: the transcript of the State Court's March 5 Hearing[111] reflects that the State Court orally granted Debtor's Intervention Motion to the extent Debtor sought to be heard and then considered Debtor's arguments on the merits, including Debtor's argument that its rights under the Lease

---

[110] The Court considers the lease assumption issues to be a red herring; Debtor cannot assume a lease that was extinguished in the Foreclosure Judgment and the February 14, 2019 Foreclosure Sale. The Court notes that Debtor has provided no evidence that it has paid or proffered rent to the Bank after the Foreclosure Sale.

[111] Adv. Doc. No. 113-4 at pp. 23 – 55.

had not been terminated by the Foreclosure Judgment and subsequent Foreclosure Sale. In particular, the State Court considered whether § 48.23(1)(d) barred Debtor from asserting its purported leasehold interest.

The State Court then addressed Debtor's argument in the Lease Termination Orders and determined that the Foreclosure Judgment extinguished Debtor's interests under the Lease. And in the Order Enforcing Writ, the State Court confirmed that it had considered Debtor's arguments on the merits when it quoted at length from one of Debtor's State Court filings in which Debtor again argued that its rights survived the Foreclosure Judgment.[112] Debtor unsuccessfully raised this issue for a third time in the Writ Appeal, but the Florida Second District Court of Appeal affirmed the State Court's Order Enforcing Writ.

Thus, the Court concludes that the issues raised in the Complaint were "actually litigated" in the State Court.

c.     **The State Court's determination of the issue was a critical and necessary part of the State Court's orders.**

For the following reasons, the Court finds that the State Court's ruling that Debtor's interests under the Lease were extinguished by the Foreclosure Judgment was a critical and necessary part of the Lease Termination Orders.

---

[112] Adv. Doc. No. 113-7 at p. 6.

### i.    The State Court determined Debtor's rights under the Lease.

First, as set forth above, the State Court specifically found that the Foreclosure Judgment terminated Debtor's leasehold interest. Debtor, however, argues that the Order Enforcing Writ did not decide the issue of whether the Foreclosure Judgment extinguished its rights under the Lease because, Debtor says, the Order Enforcing Writ refers to rights under "another lease"—presumably BAMC's 2007 lease with 309 Holdings, which had joined in the Intervention Motion.

In support, Debtor points to the State Court's statement in the Order Enforcing Writ that "[a]ll rights *under any 2007* leases to any entities associated with or holding under any of the individual defendants are extinguished."[113] Although Debtor correctly points out that its Lease is a 2008 lease—not a 2007 lease— when the Order Enforcing Writ is read as a whole, it is clear that the State Court's reference to "any 2007 lease" was a scrivener's error.

First, in the Foreclosure Action, the State Court and the parties referred to Debtor as the "2408 Tenant" and to 309 Holdings as the "309 Tenant." For example, in the Lease Termination Order, the State Court refers to the "2408 Tenant" and the "309 Tenant," and Debtor's own Motion for Rehearing uses those same definitions.[114]

---

[113] *Id.*

[114] Adv. Doc. No. 113-4 at p. 2.

Second, the State Court, in the paragraph preceding the Order Enforcing Writ's reference to all "rights under any 2007 lease," quotes directly from Debtor's State Court filing in which Debtor argued that 2408 Tenant's, (i.e., Debtor's) rights under the Lease survived the Foreclosure Judgment:

> Until a court adjudicates *2408 Tenant*'s rights under *its lease*, including but not limited to whether its lease and rights thereunder survived the foreclosure sale of the Property, whether the purchaser of the Property at the foreclosure is bound by its lease, etc., *2408 Tenant* will continue to possess the subject real property in accordance with *its lease* as it has since 2008.[115]

The State Court responded to Debtor's argument that "the 2408 Tenant"—Debtor—will continue to possess the Howard Property, by stating: "No it will not."[116] Thus, when read as a whole, it is clear that the State Court determined Debtor's post-foreclosure rights under the Lease in the Lease Termination Orders and the Order Enforcing Writ.

### ii. The State Court's decision that Debtor's leasehold interest did not survive the Foreclosure Judgment was critical and necessary to both the Lease Termination Orders and the Order Enforcing Writ.

The State Court's finding in the Lease Termination Orders that § 48.23(1)(d) barred Debtor from asserting its rights under the Lease disposed of the merits of the arguments Debtor raised in the Intervention Motion. This ruling was critical and

---

[115] Adv. Doc. No. 113-7 at p. 6 (emphasis added).

[116] *Id.*

necessary to overruling Debtor's objections to the Foreclosure Sale. And the State Court could not have entered its Order Enforcing Writ, the effect of which was to dispossess Debtor from the Howard Property, without ruling that Debtor's leasehold interest did not survive the Foreclosure Judgment.

> ### d.    The standard of proof in the State Court proceeding was at least as high as it is in this adversary proceeding.

Debtor contends the standard of proof in the State Court was not as high as it is in the Bankruptcy Court because, Debtor says, no evidence was presented to the State Court on the issue of whether its leasehold interest survived the Foreclosure Judgment. For two reasons, the Court disagrees.

First, the State Court conducted a hearing on the Intervention Motion, in which Debtor incorporated its objection to the Foreclosure Sale, and the State Court determined, as a matter of law, that Debtor's failure to comply with the requirements of § 48.23(1)(d) barred it from asserting its rights under the Lease. Debtor did not provide the State Court with any evidence to establish that it complied with § 48.23(1)(d), nor did it come forward with such evidence in its Motion for Rehearing.

Second, the claims raised in Debtor's Complaint all hinge on the same state law claim that Debtor raised in the Intervention Motion:   Debtor seeks a judicial declaration that its leasehold interest survived the Foreclosure Judgment. Bankruptcy courts resolve state law claims in accordance with state substantive law, including the

burden of proof under state law.[117] And on this claim, whether asserted in State Court or here in Bankruptcy Court, Debtor bears the burden of proof by a preponderance of the evidence.[118]

## IV.    CONCLUSION

The District Court remanded this adversary proceeding to this Court to consider whether the *Rooker-Feldman* doctrine applies to any judgments entered after Debtor intervened in the Foreclosure Action or whether any judgments are otherwise entitled to preclusive effect.

For Debtor to prevail on any of its claims, this Court must find that Debtor's leasehold interest survived the Bank's Foreclosure Judgment. But the *Rooker-Feldman* doctrine bars this Court from reviewing and rejecting the State Court's finding in the Lease Termination Orders that Florida Statute § 48.23(d)(1) constitutes a bar to

---

[117] *Raleigh v. Illinois Dep't of Revenue*, 530 U.S. 15, 20 – 21 (2000) (explaining that "[t]he 'basic federal rule' in bankruptcy is that state law governs the substance of claims" and holding that "the burden of proof is an essential element of the claim itself; one who asserts a claim is entitled to the burden of proof that normally comes with it").

[118] *In re Kutchins* 2008 WL 5633634, at *4 (Bankr. M.D. Fla. 2008) ("Florida law does not clearly articulate the standard of proof in a declaratory action other than to require the plaintiff to establish 'the existence of a present, actual controversy, as well as proving the material allegations of the complaint.' The law is silent as to the weight of the burden—whether the 'preponderance of the evidence' or the higher and more difficult 'clear and convincing' standard is required. In most civil actions, the preponderance standard is the generally accepted burden of proof. The Court assumes the same is true in the case of [debtor's] declaratory judgment action. Because the preponderance standard applicable to litigation involving exceptions to discharge is lesser than the 'clear and convincing' standard and because no lower standard of proof exists, the requirement that the burden of proof in the later proceeding be no greater than that in the earlier proceeding is satisfied.") (citations omitted).

Debtor's enforcing its leasehold interest against the Howard Property. Therefore, this Court lacks jurisdiction to afford Debtor relief, and Debtor's Complaint must be dismissed.

Alternatively, if the *Rooker-Feldman* doctrine does not apply, the Court considers the Bank's motion to dismiss as a motion for summary judgment under Rule 56(a). Under Rule 56(a), summary judgment is appropriate when the moving party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.

The Court finds that Debtor bears the burden of proof on its claims; the Bank has met its initial burden to come forward with affirmative evidence showing that Debtor will be unable to prove its claims at trial; and Debtor has failed to show the existence of a genuine issue of material fact. As set forth above, the Court concludes that res judicata and collateral estoppel bar Debtor from relitigating the State Court's findings that Debtor's leasehold interest did not survive the Foreclosure Judgment.

Accordingly, it is

**ORDERED** that the Bank's *Motion to Dismiss Third Amended Complaint and Objection to Claim No. 16 or in the Alternative, Motion for Summary Judgment* (Adv. Doc. No. 113) is **GRANTED** as follows:

1.      The Third Amended Complaint (Adv. Doc. No. 103) is **DISMISSED** with prejudice for lack of jurisdiction;

2.    Alternatively, the Court **GRANTS** summary judgment in favor of the Bank and against Debtor on Counts 1 – 5 of Debtor's Third Amended Complaint.

Clerk's Office to service interested parties via CM/ECF.